## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MALIK RAHIM,**                                              **CIVIL ACTION**
     **Plaintiff**

**VERSUS**                                                    **No. 11-2850**

**FEDERAL BUREAU**                                            **SECTION "E"**
**OF INVESTIGATION, et al.,**
     **Defendants**

### ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Defendants, the U.S. Department of Justice ("DOJ") and the Federal Bureau of Investigation ("FBI") (together, "Defendants").[1] Plaintiff, Malik Rahim ("Plaintiff"), opposes the motion.[2] For the following reasons, the motion is **GRANTED** in all respects.[3]

### *Background*

Hurricane Katrina made landfall in Louisiana on August 29, 2005. In the days following the storm, Plaintiff, with others, founded Common Ground Relief ("CGR" or "the organization") in order to provide short-term relief to Gulf Coast storm victims, as well as long-term support for rebuilding communities in the greater New Orleans, Louisiana area. According to Plaintiff, Brandon Darby ("Darby") began working with CGR shortly after its formation in the fall of 2005 and remained an active member in the organization until some

---

[1] R. Doc. 23. Defendants have also filed a reply memorandum. *See* R. Docs. 30 and 32.

[2] R. Doc. 26.

[3] The parties have represented to the Court that there are no disputed material facts that would prevent this matter from being summarily resolved on the briefs. *See* R. Doc. 33.

time in 2008.

Thereafter, Darby wrote an open letter in December 2008, which was posted on an Internet website, revealing that he had served as an informant for the FBI. A few weeks later, the criminal prosecution of David McKay ("McKay") – who faced domestic terrorism charges relating to the 2008 Republican National Convention in St. Paul, Minnesota – proceeded to trial in the U.S. District Court for the District of Minnesota on January 26, 2009.[4] At trial, Darby testified against McKay as a government witness and confirmed that he became an FBI informant in November 2007.[5]

Approximately one month later on February 24, 2009, Plaintiff submitted a Freedom of Information Act ("FOIA" or "the Act," 5 U.S.C. § 522 *et seq.*) request to the FBI seeking "documents and things pertaining to Malik Rahim or his organization Common Ground Relief, from 2005 through the present."[6] Plaintiff indicated he sought records regarding "[s]urveillance, investigation, use of informants and agents, planting or gathering 'evidence' and any other activities pertaining to Malik Rahim, *including but not limited* to all such documents and things pertaining to Mr. Rahim and the following: The organization

---

[4] *United States v. David G. McKay and Bradley N. Crowder*, Criminal Action No. 08-291 (D. Minn.) ("*McKay*"). McKay and Bradley Crowder ("Crowder") were charged in three counts of a three-count indictment charging that they, aiding and abetting others, had (1) possessed an unregistered destructive device in violation of 26 U.S.C. §§ 5845, 5861(d) and 5871, and 18 U.S.C § 2; (2) illegally manufactured destructive devices in violation of 26 U.S.C. §§ 5822, 5845, 5861(f) and 5871, and 18 U.S.C § 2; and (3) possessed a destructive device not identified by a serial number in violation of 26 U.S.C. §§ 5845, 5861(i) and 5871, and 18 U.S.C § 2. *See McKay*, R. Doc. 20. Crowder pled guilty to count one of the indictment on January 8, 2009, prior to McKay's trial. *See McKay*, R. Doc. 82.

[5] FBI Agent Timothy Sellers corroborated Darby's statements at trial, testifying that Darby became an informant on November 26, 2007. After the trial ended in a hung jury, McKay later pled guilty to all counts of a three-count amended indictment and was sentenced on May 22, 2009, to a 48-month term of imprisonment in the custody of the U.S. Bureau of Prisons. *See McKay*, R. Docs. 107, 125, 144, and 170.

[6] R. Doc. 26-1 at p. 2.

Common Ground Relief, based in New Orleans, Louisiana: and/or Any and all others associated with Common Ground Relief; and/or Mr. Brandon Darby."[7]   According to Plaintiff, he sought this information "to confirm details related to Darby's work as a government informant during the time he spent in New Orleans with Common Ground and discover the nature of the information provided to the government."[8]  On March 3, 2009, the FBI requested Plaintiff provide his middle name and date of birth to facilitate the records search.  Counsel for Plaintiff provided such information to the FBI via e-mail on March 9, 2009.

By letter dated March 17, 2009, the FBI acknowledged receipt of Plaintiff's FOIA request regarding records about himself and CGR, assigned it Request No. 1127584-000, and informed him that the FBI was "searching the indices to [its] central records system at FBI Headquarters for the information [he] requested."[9]  By separate letter also dated March 17, 2009, the FBI further informed Plaintiff that it was unable to respond to his FOIA request "for records maintained by the FBI concerning" Darby at that time, as the nature of Plaintiff's request – given that he sought documents regarding a third party – first required him to submit "either proof of death or a privacy waiver from the subject of [his] request" before the FBI could respond.[10]  The letter explained that

> [w]ithout proof of death or a privacy waiver, the disclosure of third-party information contained in law enforcement records, should they exist, is considered both a clearly unwarranted

---

[7] R. Doc. 26-1 at p. 2 (emphasis in original).

[8] R. Doc. 26. at p. 2.

[9] R. Doc. 23-5 at p. 2.

[10] R. Doc. 23-7 at p. 12.

> invasion of privacy pursuant to Exemption (b)(6), 5 U.S.C. §
> 552(b)(6), and an unwarranted invasion of personal privacy,
> pursuant to Exemption (b)(7)(C), 5 U.S.C. § 522(b)(7)(C).[11]

This type of response is known as a "*Glomar* response."  *See Phillippi v. Central Intelligence Agency*, 546 F.2d 1009 (D.C. Cir. 1976).[12]  A privacy waiver was enclosed with the letter.[13]

By letter dated June 15, 2009, the FBI informed Plaintiff that an analyst was reviewing Plaintiff's request for documents regarding himself and CGR and that he could "inquire as to the status of [Request No. 1127584-000] by calling the FBI's FOIPA Public Information Center at 540-868-4593."[14]

By letter dated July 30, 2009, Plaintiff submitted an "amended" FOIA request asking for the same records regarding Plaintiff, CGR and Darby as identified in his original February 24, 2009 request, and specified that he was seeking "Main names and/or files; Cross-referenced names and/or files; Field office records and/or files; [and] Any and all

---

[11] R. Doc. 23-7 at p. 12.  For the remainder of this order, the Court will refer to 5 U.S.C. § 552(b)(6) as "exemption 6" and 5 U.S.C. § 552(b)(7)(C) as "exemption 7(C)."

[12] *See also infra* n.33.

[13] According to Plaintiff,

> On March 13, 2013, Plaintiff's attorney, Davida Finger, emailed Brandon Darby requesting that he sign the government's waiver form and sent the waiver form attached to those emails. On March 19, 2013, Darby's attorney, Rodney Kleinman sent an email response informing that he is counsel for Darby. On March 19, 2013, Plaintiff's attorney, Davida Finger, requested of Mr. Kleinman, via email, Brandon Darby's signature on the waiver and sent the waiver form attached.

R. Doc. 26 at p. 4.  Plaintiff has not informed the Court that Darby ever signed and returned the waiver form.

[14] R. Doc. 23-6 at p. 2.  The FBI provided a second status update by letter dated September 14, 2009, informing Plaintiff that an analyst was still reviewing his request for records regarding himself and the organization as of that date.  R. Doc. 23-8 at p. 2.

paper records."[15]  By separate letter also dated July 30, 2009, Plaintiff appealed the FBI's decision regarding records pertaining to Darby[16] to the DOJ's Office of Information and Privacy ("OIP"), arguing that "Darby took part in a government impropriety [when] working as an FBI spy and provocateur within Common Ground Relief, and act of such public concern as to overcome personal privacy exemptions."[17]  In support of his appeal, Plaintiff cited Darby's open letter and several news articles regarding Darby's work as an FBI informant in the *McKay* case.  According to Plaintiff, the FBI could not justify withholding the requested documents under exemptions 6 and 7(C) due to Darby's alleged privacy interests because Darby had "thrust himself into the public eye, thus diminishing his expectation of privacy."[18]  Plaintiff further argued that the "courts have long held that the core purpose of FOIA is to protect citizens' right 'to be informed about what their government is up to' " and that the "public has a significant interest in knowing to what extent [Darby] took active measures to disrupt [Plaintiff's] and Common Ground Relief['s] work."[19]

By letter dated August 18, 2009, OIP acknowledged Plaintiff's appeal and assigned it appeal No. 09-2424.  By letter dated September 25, 2009, OIP affirmed the FBI's denial because "[w]ithout [Darby's] consent, proof of death, official acknowledgment of an

---

[15] R. Doc. 23-7 at p. 3.

[16] In the first sentence of Plaintiff's appeal letter, Plaintiff's counsel stated "I write this letter, on behalf of [Plaintiff], to the 5 U.S.C. §§ 522(b)(6) and (b)(7)(C) denial of [Plaintiff's] Freedom of Information/Privacy Acts (FOIPA) request . . . as it pertains to Brandon Darby."  R. Doc. 23-7 at p. 6.

[17] R. Doc. 23-7 at p. 6.

[18] R. Doc. 23-7 at p. 7.

[19] R. Doc. 23-7 pp. 6-8

investigation, or an overriding public interest, confirming or denying the existence of records [Plaintiff] requested would constitute a clearly unwarranted invasion of personal privacy, and could reasonably be expected to constitute an unwarranted invasion of privacy under" FOIA exemptions 6 and 7(C).[20]  OIP informed Plaintiff that if he was unhappy with the outcome of his appeal, he could file a lawsuit pursuant to 5 U.S.C. § 552(a)(4)(B).

The FBI responded to Plaintiff's request for records about himself and CGR by letter dated November 16, 2009, stating that it had reviewed twenty-five pages of records responsive to Plaintiff's request as to himself and the organization.  The FBI released all twenty-five pages to Plaintiff, with certain personally identifying information redacted pursuant to FOIA exemptions 2, 6, and 7(C).  The FBI's letter also informed Plaintiff that a search of its electronic surveillance indices failed to locate any responsive records as to Plaintiff or the organization.  Finally, the letter stated that Plaintiff had "the right to appeal any denials in [the] release" to OIP and notified Plaintiff that any such appeal had to be received within sixty days from the letter's date in order to be considered timely.[21]  Plaintiff did not contact OIP after receiving the FBI's November 16, 2009 letter.

On November 16, 2011, Plaintiff initiated the above-captioned matter pursuant to 5 U.S.C. § 552 *et seq.*[22]  Plaintiff alleges that Defendants violated the FOIA because they failed to promptly make records available to Plaintiff.  Plaintiff seeks a declaratory judgment that Defendants violated the FOIA and requests the Court to order Defendants to "make a full, adequate, and expedited search for the requested records" and to produce

---

[20] R. Doc. 23-13 at p. 2.

[21] R. Doc. 23-9 at p. 2.

[22] R. Doc. 1.

such records to Plaintiff no later than ten days after the Court's order.  Plaintiff also seeks to enjoin Defendants from assessing fees or costs related to processing Plaintiff's FOIA request.  Finally, Plaintiff alleges he is entitled to costs and reasonable attorney's fees pursuant to 5 U.S.C. § 552(a)(4)(E).

Defendants have moved for summary judgment and advance two arguments why the Court should dismiss this matter.  First, Defendants argue that Plaintiff failed to exhaust his administrative remedies as to his request for records pertaining to himself and CGR. Defendants contend that Plaintiff's failure to exhaust administrative remedies means that he cannot seek relief from this Court as to those claims.  Second, Defendants argue that their *Glomar* response citing exemptions 6 and 7(C) was proper because confirming or denying the existence or non-existence of records pertaining to Darby would cause cognizable harm within the meaning of 5 U.S.C. § 552(b)(6) and (b)(7)(C).  Thus, Defendants assert that they correctly invoked exemptions 6 and 7(C) as to Plaintiff's FOIA request concerning Darby.  In response to Defendants' motion for summary judgment, Plaintiff addresses why Defendants' *Glomar* response was improper.  In addition, Plaintiff raises the issue of whether Darby's status as an alleged FBI informed had been "officially confirmed," thereby prohibiting Defendants from employing an exclusion under 5 U.S.C. § 552(c)(2).[23]

For the reasons set forth below, the Court finds that (1) Plaintiff failed to exhaust his administrative remedies as to his request for records pertaining to himself and CGR, (2) Defendants' *Glomar* response citing exemptions 6 and 7(C) was proper, and (3) if an

---

[23] Defendants' *Glomar* response does not state that Defendants employed an exclusion pursuant to 5 U.S.C. § 552(c)(2).

exclusion was in fact employed, it was, and continues to remain, amply justified.

### Summary Judgment and the FOIA

"[M]ost FOIA cases are resolved at the summary judgment stage." *Flightsafety Servs. Corp. v. U.S. Dep't of Labor*, 326 F.3d 607, 610 (5th Cir. 2003).  As with non-FOIA cases, summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.' " *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991).  If the moving party fails to carry this burden, the motion must be denied.  If the moving party successfully carries this burden, the burden then shifts to the non-moving party to show that a genuine issue of material fact exists.  *Id.* at 322-23.  Once the burden has shifted, the non-moving party must direct the Court's attention to something in the pleadings or other evidence in the record that sets forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.  *Id.* at 324.  The non-moving party cannot simply rely on allegations or blanket denials of the moving party's pleadings as a means of establishing a genuine issue of material fact, but instead must identify specific facts that establish a genuine issue for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001).

If the dispositive issue is one on which the non-moving party will bear the burden

of proof at trial, however, the moving party may satisfy its burden by simply pointing out that the evidence in the record is insufficient with respect to an essential element of the non-moving party's claim. *See Celotex*, 477 U.S. at 325. The nonmoving party must then respond, either by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party" or by coming forward with additional evidence. *Celotex*, 477 U.S. at 332-33 & 333 n.3.

"An issue is material if its resolution could affect the outcome of the action." *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing, Inc.*, 530 U.S. 133, 150-51 (2000). All reasonable inferences are drawn in favor of the non-moving party. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

A court reviews an agency's response to a FOIA request *de novo*. 5 U.S.C. § 552(a)(4)(B). To obtain summary judgment, "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B). Thus, because Defendants withheld documents from Plaintiff, if any in fact exist, pursuant to FOIA exemptions 6 and 7(C), the burden is on Defendants to justify their decision to invoke those exemptions. "[T]he Court may grant summary judgment based solely on information provided in an agency's affidavits or

9

declarations if they are relatively detailed and when they describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.' " *Strunk v. U.S. Dep't of Interior*, 752 F. Supp. 2d 39, 42-43 (D. D.C. 2010) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).  Agency affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.' " *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).  Ultimately, "an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible."  *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007) (internal quotation marks and citations omitted).

## Law and Analysis

Access to government records is the "fundamental principle" that animates the FOIA. *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989).  "Without question, the Act is broadly conceived. It seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands."  *EPA v. Mink*, 410 U.S. 73, 80 (1973).  In essence, the "basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  As a result, the Act's "philosophy" is one " 'of full agency disclosure unless information is exempted under clearly delineated statutory language.' " *Dep't of Air*

*Force v. Rose*, 425 U.S. 352, 360-361 (1976) (quoting S. Rep. No. 813, 89th Cong., 1st Sess. 3 (1965)).

At the same time, Congress has also recognized "that public disclosure is not always in the public interest." *CIA v. Sims*, 471 U.S. 159, 166-67 (1985). Consequently, the FOIA sets forth nine "specific exemptions from disclosure." *John Doe Agency*, 493 U.S. at 152. While such exemptions must be narrowly construed, they "are intended to have meaningful reach and application." *John Doe Agency*, 493 U.S. at 152. Thus, the "FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003) (citing *John Doe Agency*, 493 U.S. at 152).

The FOIA requires disclosure of government records unless the requested information falls within one of the nine enumerated exemptions. *See* U.S.C. § 552(b). A U.S. District Court does not have jurisdiction to compel disclosure of a properly withheld agency record — that is, a record falling within an exemption. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980) ("Under 5 U.S.C. § 552(a)(4)(B)[,] federal jurisdiction is dependent upon a showing that an agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.' ").

Within twenty days (excepting weekends and legal holidays) after receipt of a FOIA request, the receiving agency must determine whether it will produce or withhold the requested documents. 5 U.S.C. § 552(a)(6)(A)(i). If the agency makes an adverse decision,

the requester may file an administrative appeal.[24]  5 U.S.C. § 552(a)(6)(A)(ii). The agency must then issue a decision within twenty days (excluding weekends and legal holidays) after receiving the appeal. 5 U.S.C. § 52(a)(6)(A)(ii). If the agency denies the appeal, the requestor may thereafter file suit against the agency in federal district court.  5 U.S.C. § 552(a)(4)(B).  A requestor must fully and timely exhaust such administrative remedies prior to seeking judicial review.  *Vinoche v. U.S. Dep't of Air Force*, 983 F.2d 667, 669 (5th Cir. 1993).  Exhaustion of administrative remedies includes exhaustion of the administrative appeal process set forth in 5 U.S.C. § 552(a)(6)(A)(ii).[25]  *Wilbur v. CIA*, 355 F.3d 675, 676 (D.C. Cir. 2004).

## I.     FOIA Request Regarding Plaintiff and CGR

First, Defendants argue that Plaintiff failed to exhaust his administrative remedies regarding his request for records pertaining to himself and the organization.  Defendants note that the FBI produced twenty-five redacted pages of records on November 16, 2009, and informed Plaintiff that he could appeal the FBI's response to OIP within sixty days. Plaintiff did not thereafter file an appeal.[26]  In addition, Defendants further assert that Plaintiff's July 30, 2009 letter to OIP was limited to appealing the FBI's decision regarding Darby, and therefore it could not have exhausted his administrative remedies as to Plaintiff

---

[24] The FBI is a component of the DOJ.  DOJ regulations permit an individual, such as Plaintiff in this case, to appeal an adverse FOIA decision by the FBI to DOJ's Office of Information Policy within sixty days of the initial decision. *See* 28 C.F.R. § 16.9.

[25] Nevertheless, "if the agency has not issued its 'determination' [on the appeal] within the required time period, the requester may bring suit directly in federal district court without exhausting administrative appeal remedies."  *See Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 182 (D.C. Cir. 2013).

[26] Plaintiff does not dispute that he did not file any appeal after receiving the FBI's November 16, 2009 letter and records enclosed therein.

and the organization.  Consequently, because Plaintiff has failed to exhaust his administrative remedies, Defendants argue that Plaintiff cannot seek judicial relief from this Court as to the FBI's November 16, 2009 production. Plaintiff responds that he properly appealed the FBI's response regarding himself and CGR via his July 30, 2009 letter to OIP.  Thus, Plaintiff submits that he exhausted his administrative remedies via his July 30, 2009 letter.

Plaintiff's argument that he properly appealed the FBI's response regarding himself and CGR via his July 30, 2009 letter is not persuasive.  The FBI responded to Plaintiff's FOIA request by two letters, each dated March 17, 2009.  One letter informed Plaintiff that the FBI could not process his request for records pertaining to a third party – Darby – because such records, if they in fact existed, would be covered by exemptions 6 and 7(c). This letter specifically informed Plaintiff that unless he took affirmative steps to demonstrate Darby was deceased or obtained a privacy waiver from Darby, the FBI would not respond to that aspect of Plaintiff's resquest.  The other letter informed Plaintiff that the FBI had assigned a file number (No. 1127584-000) to the remainder of his request regarding himself and CGR and stated that the agency had begun to search its records system for responsive documents.  On July 30, 2009, Plaintiff's counsel wrote a letter to the OIP, which opens: "I write this letter, on behalf of [Plaintiff], to the 5 U.S.C. §§ 522(b)(6) and (b)(7)(C) denial of [Plaintiff's] Freedom of Information/Privacy Acts (FOIPA) request (attached hereto, Attachment #1) as it pertains to Brandon Darby."[27]  This introductory sentence clearly states that Plaintiff was appealing the FBI's denial of Plaintiff's FOIA

---

[27] R. Doc. 23-7 at p. 6.

request "as it pertains to Brandon Darby" under exemptions 6 and 7(C).[28]  The remainder of the July 30, 2009 letter further explains that Plaintiff's appeal was in fact limited to records "pertain[ing] to Brandon Darby," as the letter first outlines the information known about Darby working as an FBI informant in the *McKay* case, then cites media articles documenting Darby's negative behavior as a member of CGR, and closes with the argument that "[t]he public has a significant interest in knowing to what extent [Darby] took active measures to disrupt [Plaintiff's] and Common Ground Relief['s] work."[29]  Consequently, the Court finds the only reasonable reading of Plaintiff's July 30, 2009 letter was that Plaintiff's appeal was limited to the FBI's *Glomar* response regarding Darby.

Furthermore, Plaintiff's appeal of the FBI's decision "as it pertains to Brandon Darby"[30] does not satisfy the exhaustion requirement for records regarding Plaintiff and the organization.  A FOIA requester must administratively appeal every discrete issue for which judicial review is sought, otherwise he has failed to exhaust his administrative remedies as to any un-appealed claims.  *See Hamilton Secs. Grp., Inc. v. U.S. Dep't of Housing & Urban Dev.*, 106 F. Supp. 2d 23, 27 (D. D.C. 2000) (limiting judicial review to only the issues properly appealed), *aff'd*, 2001 WL 238162 (D.C. Cir. 2001); *Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health & Human Servs.*, 844 F.Supp. 770, 779-80 (D. D.C. 1993).

Plaintiff argues that a decision from another section of this Court as establishes a rule in the Eastern District of Louisiana that "a requester who appeals a denial of only part

---

[28] R. Doc. 23-7 at p. 6 (bold removed).

[29] R. Doc. 23-7 at pp. 6-8.

[30] R. Doc. 23-7 at p. 6.

of his request may be considered to have appealed the other parts."[31]   The case Plaintiff cites

as establishing this rule involved an individual, Jerry Robinett ("Robinett"), who applied

for employment with the U.S. Postal Service ("USPS").   *See Robinett v. U.S. Postal Service*,

2002 WL 1728582, at *1 (E.D. La. July 24, 2002) (Vance, J.).   After his application was

denied, Robinett requested a copy of his application and any other related evaluation

documents from the USPS pursuant to the FOIA.   *Robinett*, 2002 WL 1728582 at *1.   When

his entire request was denied, Robinett appealed the decision and the USPS subsequently

released his employment application, but not any scoring evaluation material.   Robinett

thereafter filed a lawsuit in the U.S. District Court for the Eastern District of Louisiana

arguing that he was also entitled to the scoring evaluation material under the FOIA.   In

response, the USPS argued that Robinett had not exhausted his administrative remedies

with respect to the scoring evaluation material.   The *Robinett* Court, after examining

plaintiff's appeal letter, determined that his appeal was "particularly concerned" with

obtaining the scoring evaluation material, and thus that it was broad enough to encompass

such material.   As a result, the *Robinett* Court found that Robinett had exhausted his

administrative remedies and rejected the USPS' exhaustion argument.   *Robinett*, 2002 WL

1728582 at *3.

Unlike in *Robinett*, nothing in Plaintiff's July 30, 2009 letter to OIP indicated he

sought review of any aspect of the FBI's decision other than "as it pertain[ed] to Brandon

Darby."[32]   Consequently, *Robinett* is inapposite.   The Court finds Plaintiff has failed to

---

[31] R. Doc. 26 at p. 23.

[32] R. Doc. 23-7 at p. 6.   The Court also observes that the FBI informed Plaintiff it was processing
his request as to himself and the organization on June 15, 2009, and provided a second status update on
September 14, 2009.   The FBI released twenty-five redacted pages regarding this aspect of his request on

exhaust his administrative remedies regarding records pertaining to himself and CGR. Because Plaintiff must exhaust his administrative remedies before seeking judicial relief from this Court, Defendants' motion for summary judgment as to Plaintiff's request for records pertaining to himself and CGR is **GRANTED**.

## II.    FOIA Request Regarding Brandon Darby

Second, Defendants argue that they correctly issued a *Glomar* response[33] to Plaintiff's request for records pertaining to Darby.  In this case, Defendants refused to confirm or deny the existence of these records – absent a privacy waiver or proof of death – in order to protect Darby's privacy interests, unless Plaintiff was able to demonstrate a public interest in disclosure that outweighed Darby's privacy interests.[34]

An agency may issue a *Glomar* response to a FOIA request when "to confirm or deny the existence of records . . . would cause harm cognizable under an [sic] FOIA exemption." *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982).  The burden is on Defendants to show that the records covered by the FBI's *Glomar* response, if they exist, fall within the relevant

---

November 16, 2009.  Thus, as the FBI had not made any decision whether to release or withhold such documents as to Plaintiff and CGR before July 30, 2009, it does not logically follow that Plaintiff could have appealed the FBI's decision as to himself and CGR on July 30, 2009.

[33] Defendants' *Glomar* response states that "[w]ithout proof of death or a privacy waiver, the disclosure of third-party information contained in law enforcement records, should they exist, is considered both a clearly unwarranted invasion of privacy pursuant to Exemption (b)(6), 5 U.S.C. § 552(b)(6), and an unwarranted invasion of personal privacy, pursuant to Exemption (b)(7)(C), 5 U.S.C. § 522(b)(7)(C)."  R. Doc. 23-7 at p. 12.
     The term "*Glomar* response" comes from a case in which the Central Intelligence Agency defended its refusal to confirm or deny the existence of records regarding a certain ship, the *Hughes Glomar Explorer*.  *See Phillippi*, 546 F.2d at 1010-11.  Though commercial records indicated the ship was a large research vessel owned by a corporation, a journalist suspected it was property of the United States and filed a FOIA request regarding certain records relating to the vessel.  *Phillippi*, 546 F.2d at 1011.

[34] R. Doc. 23-2 at p. 6.  According to the 28 U.S.C. § 1746 declaration executed by David Hardy ("Hardy Declaration"), section chief of the Record/Information Dissemination Section of the FBI's Records Management Division, "[t]he FBI instituted this policy in order to protect the privacy rights of [third-party] individuals, particularly those who appear in FBI law enforcement files."  R. Doc. 23-2 at p. 6.

exemptions invoked – that is, exemptions 6 and 7(C).  5 U.S.C. § 552(a)(4)(B); *Strunk*, 752 F. Supp. 2d at 42-43.  Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  "Similar files" is broadly interpreted, such that exemption 6 protects all information that "applies to a particular individual" from disclosure in the absence of a public interest in disclosure  *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 495, 602 (1982) ("The exemption [was] intended to cover detailed Government records on an individual which can be identified as applying to that individual.") (citation omitted); *New York Times Co. v. NASA*, 920 F.2d 1002, 1005 (D.C. Cir. 1990) (en banc).   Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Given the nature of the records sought in Plaintiff's FOIA request and the government agency to which it was addressed, responsive records, if they exist, would be located in law enforcement files within the meaning of exemption 7(C).[35]  Consequently, the Court will limit its analysis to

---

[35] According to the Hardy Declaration,

> The FBI is responsible for detecting and undertaking investigations into possible violations of Federal criminal laws.  *See* 28 U.S.C. § 533.  Plaintiff alleges that Brandon Darby was working as an informant for the FBI in relation to plaintiff and Common Ground Relief.  Any records the FBI would have related to Mr. Darby in that capacity, if such records even exist, would necessarily have been compiled for law enforcement purposes and would relate directly to, and be the product of, the FBI's investigation of violations of the United States Code for which the FBI has investigative responsibility.  If they existed, any records created by the FBI in the course of an investigation – including any informant records – would have been compiled to document the investigative actions and findings in the criminal case under investigation and to support any potential prosecution.

whether Defendants have satisfied their burden to show records pertaining to Darby, if they exist and were released, could "reasonably be expected to constitute an unwarranted invasion of personal privacy" within the meaning of exemption 7(C). 5 U.S.C. § 552(b)(6); *Barbosa v. DEA*, 541 F. Supp. 2d 108, 111 & 111 n.2 (D. D.C. 2008).

### A.    Darby's Privacy Interests

The FBI has provided a sworn declaration averring that the agency issued a *Glomar* response to Plaintiff's FOIA request because disclosure of such records, if they exist, would be an unwarranted invasion of Darby's privacy, as Plaintiff accuses Darby of being an FBI informant.[36]  Plaintiff responds that Darby has no privacy interests in the requested material because he has officially confirmed he is an FBI informant.[37] Plaintiff has provided the Court with trial testimony from the *McKay* case and news articles which, according to Plaintiff, show that Darby "has admitted publically [sic] that he worked as an informant and that he was an informant prior to the 2008 [Republican National Convention]."[38]

First, the Court observes, Plaintiff's arguments notwithstanding, that courts have repeatedly recognized that third parties such as informants and other cooperating witnesses have significant privacy interests which outweigh the public interest in disclosure. *See, e.g.*, *Thomas v. U.S. Dep't of Justice*, 260 F. App'x 677, 678 (5th Cir. 2007) ("The Supreme Court has held as a categorical matter that a third party's request for law-enforcement records about a private citizen can reasonably be expected to invade that citizen's privacy. (citing

R. Doc. 23-2 at p. 6.

[36] R. Doc. 23-2 at pp. 6-8.

[37] The Court discusses Plaintiff's arguments regarding "official confirmation" and the exclusion set forth in 5 U.S.C. § 552(c)(2) *infra* at pp. 23-27.

[38] R. Doc. 26 at p. 5.

*Reporters Comm.*, 489 U.S. at 780)); *Koch v. USPS*, 1993 WL 394629, at *1 (8th Cir. 1993) ("The informant's interest in maintaining confidentiality is considerable; as an informant of potentially criminal activities, the informant risked embarrassment, harassment, and emotional and physical retaliation. If anything, public interest supports maintaining the confidentiality of the report."); *Burge v. Eastburn*, 934 F.2d 577, 579 (5th Cir. 1991) (finding that the FBI properly invoked exemption 7(C) regarding a request for witness statements given to the FBI in relation to a murder); *Halloran v. Veterans Admin.*, 874 F.2d 315, 320-21 (5th Cir. 1989) ("[P]ersons who are not the subjects of the investigation may nonetheless have their privacy invaded by having their identities and information about them revealed in connection with the investigation. Exemption 7(C) is intended to protect the privacy of any person mentioned in the requested files, not only the person who is the object of the investigation." (internal quotation marks and citation omitted)); *Lesar v. Dep't of Justice*, 636 F.2d 472, 488 (D.C. Cir. 1980) (holding that "identification of the individuals involved in the FBI's investigation of Dr. [Martin Luther] King[,] [Jr.] would constitute an unwarranted invasion of their privacy in light of the contemporary and controversial nature of the information"); *Fischer v. U.S. Dep't of Justice*, 596 F.Supp. 2d 34 (D. D.C. 2009) (upholding the FBI's *Glomar* response invoking exemption 7(C) to protect the identities of, and information provided by, cooperating witnesses); *Barbosa*, 541 F. Supp. 2d 108 (upholding the DEA's *Glomar* response invoking exemption 7(C) to protect privacy interests in records pertaining to an alleged informant); *Meserve v. U.S. Dep't of Justice*, 2006 WL 2366427 (D. D.C. Aug. 14, 2006) (upholding the EOUSA's partial *Glomar* response invoking exemption 7(c) to protect privacy interests in records pertaining to a witness); *Butler v. DEA*, 2006 WL 398653 (D. D.C. Feb. 16, 2006) (upholding the DEA's

19

*Glomar* response invoking exemption 7(c) to protect privacy interests in records pertaining to alleged informants).

Second, the Court has carefully examined the materials Plaintiff has submitted. While the Court observes Darby has testified in open court and made public statements to the press regarding his work as an FBI informant in connection with the 2008 Republican National Convention and the *McKay* case, Darby has never made statements indicating he served as an FBI informant for any investigation involving Plaintiff or CGR.  The Court finds that Darby has not been officially confirmed as an FBI informant with respect to any investigation involving Plaintiff or the organization.  As a result, Darby's statements regarding the *McKay* case do not diminish his privacy interests in records, if any exist, that are responsive to Plaintiff's FOIA request as to Plaintiff and the organization.  *See, e.g.*, *Burge*, 934 F.2d at 578 (holding that third parties did not waive any privacy interest in statements given to the FBI by testifying at the requestor's murder trial because "[t]he fact that both [the statements and the testimony] may refer to the same event . . . is plainly not enough to diminish significantly the privacy interest at issue"); *Seme v. FBI*, 2012 WL 4336251, at *5 (D. D.C. Sept. 20, 2012) (finding that a third-party individual maintains his privacy interest "even if the requester already knows, or is able to guess, his identity" and even where the third party's status as an FBI informant "may have been disclosed in deposition testimony and trial testimony"); *Meserve*, 2006 WL 2366427, at *6-7 (holding that testimony at trial did not diminish privacy interests); *Tanks v. Huff*, 1996 WL 293531, at *4 (D. D.C. May 28, 1996) (finding that persons who testified at the requester's trial maintained significant privacy interests and that the government properly neither confirmed nor denied the existence of records unrelated to the requestor or his prosecution

under exemption 7(C)).   Thus, Darby has a privacy interest, within the meaning of exemption 7(C), in any responsive records if they in fact exist.

### B.    The Public Interest

Because the Court finds that Darby has a privacy interest in any responsive records, if they exist, the Court must next determine whether the public interest in disclosing any such records outweighs Darby's individual privacy interest.  *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004).   In order for the public interest to take precedence over Darby's privacy interest, Plaintiff, as the FOIA requester, has the burden to "(1) 'show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and (2) 'show the information is likely to advance that interest.' " *Boyd v. Criminal Div. of U.S. Dept. of Justice*, 475 F.3d 381, 387 (D.C. Cir. 2007) (quoting *Favish*, 541 U.S. at 172)).

"[P]rivacy interests are particularly difficult to overcome when law enforcement information regarding third parties is implicated." *Martin v. U.S. Dep't of Justice*, 488 F.3d 446, 457 (D.C. Cir. 2007).   With respect to exemption 7(C), "the only relevant public interest in the FOIA balancing analysis [under *Favish* is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.' " *U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989)).   To satisfy this "demanding" standard, a "requester must at a minimum 'produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.' " *Blackwell v. FBI*, 646 F.3d 37, 41 (D.C. Cir. 2011) (quoting *Favish*, 541

U.S. at 174).

Plaintiff argues he has satisfied this burden because he "pursued this case to help the public understand how government informants were used in New Orleans in the post-hurricane Katrina years."[39]  In essence, Plaintiff alleges that the FBI acted improperly by having Darby infiltrate the organization in order to "disrupt" CGR's activities in New Orleans following Katrina.  However, Plaintiff has not provided the Court with any *evidence* to support his allegations that the FBI engaged in any sort of impropriety.  Without evidence that would lead a reasonable person to believe some sort of government impropriety might have occurred, Plaintiff cannot show that the public interest sought to be advanced is a significant one or that the information sought is likely to advance that interest.  *Favish*, 541 U.S. at 172.  Consequently, Plaintiff's mere allegations fail to satisfy his burden to overcome Darby's privacy interests.  *See, e.g.*, *Pugh v. FBI*, 793 F. Supp. 2d 226, 232 (D. D.C. 2011) ("A requester might overcome an individual's privacy interest if . . . he offers compelling evidence that the agency denying the FOIA request is engaged in illegal activity.  Plaintiff's unsupported assertion of government wrongdoing is far less than is needed to demonstrate that the public interest sought to be advanced is a significant one, and that release of the requested information is likely to advance that interest.") (citations and quotations omitted); *Fischer*, 596 F. Supp. 2d at 47 n.18 ("Plaintiff's speculative allegations regarding agency mistakes and bad faith do not constitute evidence of illegal activity nor do they raise an inference that the government is improperly withholding information.").

The government's conduct is presumed to be proper unless contradicted by evidence.

---

[39] R. Doc. 26 at p. 21.

22

*U.S. Dep't of State v. Ray*, 502 U.S. 164, 179 (1991); *see also United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926) ("The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.").   As Plaintiff has not come forward with any evidence indicating the government engaged in any impropriety, Plaintiff cannot demonstrate that a significant public interest outweighs Darby's privacy interests, if any records pertaining to Darby in fact exist.  *See Boyd*, 475 F.3d at 33 ("Unsubstantiated assertions of government wrongdoing . . . do not establish a meaningful evidentiary showing." (citation and quotation omitted)).   Disclosing any responsive records, if they exist, would constitute an unwarranted invasion of Darby's privacy within the meaning of exemption 7(C).   Consequently, the Court finds that Defendants' *Glomar* response was proper.

### C.   5 U.S.C. § 552(c)(2) "Exclusion"

In response to Defendants' motion for summary judgment, Plaintiff also argues that Darby's identity as an FBI informant has been "officially confirmed" and that, as a result, Defendants may not avail themselves of the exclusion set forth in 5 U.S.C. § 552(c)(2).[40] *See, e.g.*, *Boyd*, 475 F.3d at 389 ("Where an informant's status has been officially confirmed, a Glomar response is unavailable, and the agency must acknowledge the existence of any responsive records it holds.").   Thus, Plaintiff contends that Defendants' *Glomar* response regarding Darby was improper.

Title 5, United States Code, Section 552(c)(2) provides that

> [w]henever informant records maintained by a criminal law

_____

[40] R. Doc. 26 at p. 9.

> enforcement agency under an informant's name or personal identifier are requested by a third party according to the informant's name or personal identifier, the agency may treat the records as not subject to the requirements of [the FOIA] unless the informant's status as an informant has been officially confirmed.

Section 552(c) differs from the exemptions set forth in Section 552(b) because this section allows the government to "exclude" certain highly sensitive information from the FOIA, rather than treat it as information that is "exempt" from production. *See Steinberg v. U.S. Dep't of Justice*, 1997 WL 349997, at *1 (D. D.C. June 18, 1997). "An 'exclusion' is different from an exemption in that the Government need not even acknowledge the existence of excluded information.   Rather, the Government is permitted to file an *in camera* declaration, which explains either that no exclusion was invoked or that the exclusion was invoked appropriately." *Steinberg*, 1997 WL 349997, at *1.

The caselaw on which Plaintiff relies to argue Darby's status as an informant as been "officially confirmed" is not analogous given the facts of this case.[41]  First, in *Pickard v. U.S. Dep't of Justice*, the FOIA requestor, Williams Pickard ("Pickard"), presented evidence that Gordon Todd Skinner ("Skinner") had been an informant in the DEA's investigation of Pickard.  Skinner also testified against Pickard at Pickard's trial.  *Pickard*, 653 F.3d 782, 785 (9th Cir. 2011).  Although the government contested whether the evidence Pickard submitted in his FOIA case was admissible, the government did not dispute that the prosecution elicited testimony in open court from Skinner during Pickard's trial.  *Pickard*, 653 F.3d at 785.   The government also did not dispute that the prosecution elicited testimony from DEA agents who identified Skinner as a confidential informant at Pickard's

---

[41] R. Doc. 26 at pp. 9-13.

trial. *Pickard*, 653 F.3d at 785. The Ninth Circuit found that this "undisputed evidence" demonstrated an "intentional, public disclosure" of Skinner's status as a confidential informant, and thus concluded that the "cat is out of the bag" as to Skinner's status as a confidential informant "*in Pickard's case.*" *Pickard*, 653 F.3d at 784, 788 (emphasis added).

As discussed above, Plaintiff has not come forward with any evidence indicating that Plaintiff's status has been officially confirmed as an FBI informant for an investigation of *Plaintiff and CGR*. Thus, this Court has found that Plaintiff's status as an alleged FBI informant has not been confirmed. Any purported confirmation of Darby's status as an informant as to the *McKay* case is of no moment as to this case. *Pickard* provides no basis on which to deny Defendants' motion for summary judgment.[42]

Furthermore, in *Boyd*, the FOIA requester, Willie Boyd ("Boyd"), had been convicted on drugs and weapons charges and sought information on whether his girlfriend's brother, Bryant Troupe ("Troupe"), had been a confidential informant for the government in other cases. *Boyd*, 475 F.3d at 384. Boyd had learned that Troupe testified in connection with another criminal case ("*Miller*") and Boyd sought to use information about Troupe's status as a confidential informant to support his theory that the government failed to investigate whether the drugs and weapons found in Boyd's closet belonged to Troupe. *Boyd*, 475 F.3d at 384. Boyd submitted a broad  FOIA request seeking "any and all information in your files on Bryant Troupe, as a confidential informant." *Boyd*, 475 F.3d at 389. The government issued a *Glomar* response, refusing to confirm or deny the existence of any

---

[42] Likewise, Plaintiff's reliance on *Memphis Publishing Company v. FBI*, 879 F. Supp. 2d 1 (D. D.C. 2012) is also unavailing because Darby's alleged status as an FBI informant has not been officially confirmed as to any investigation involving Plaintiff or CGR.

responsive information, and claiming that, if such information existed, it would be exempted from disclosure under 7(C). *Boyd*, 475 F.3d at 388-89. The district court granted summary judgment in favor of the government and the D.C. Circuit affirmed, concluding that any records regarding Troupe's status as a confidential informant, if they existed, were properly withheld. The D.C. Circuit also suggested that the government's *Glomar* response, given that it also refused to confirm or deny the existence of documents with respect to Troupe's involvement in the *Miller* case, may have been improper because that Troupe testified at the *Miller* trial that he was a confidential informant. Nevertheless, the D.C. Circuit reasoned that, even if the government's response was not appropriate, this fact was immaterial because "[a]ny error" in giving a *Glomar* response "would not entitle Boyd to anything more under FOIA" because the records as to Troupe *vis-à-vis* Boyd's case, if any existed, would have been withheld from Boyd under exemption 7(C). *Boyd*, 475 F.3d at 390.

Plaintiff's FOIA request regarding Darby sought records relating to Darby's role as an alleged informant in an investigation of Plaintiff and CGR. As discussed above, Darby's status as an alleged informant as to Plaintiff and CGR has not been officially confirmed. Thus, Defendants properly issued a *Glomar* response to Plaintiff's request for records pertaining to Darby. *Boyd* provides no basis on which to deny Defendants' motion for summary judgment.

Finally, Defendants respond that Darby's status as an alleged informant has not been confirmed and thus that the exclusion set forth in 5 U.S.C. § 552(c)(2) is not at issue in this case. Nevertheless, even assuming *arguendo* that Section 552(c)(2) is at issue, Defendants request the Court to follow the procedure the DOJ has established when a FOIA requester

26

suggests an alleged informant's identity has been officially confirmed.  According to the DOJ, "it is essential to the viability of the exclusion mechanism that requesters not be able to deduce whether an exclusion was employed at all in a given case" and, consequently, it is "the government's standard litigation policy . . . that whenever a FOIA plaintiff raises a distinct claim regarding the suspected use of an exclusion, the government routinely will submit an *in camera* declaration addressing that claim."[43]

Defendants sought, and were granted, leave to file an *ex parte* declaration for *in camera* review regarding Plaintiff's claim with respect to Section 552(c)(2).  The Court, having undertaken a full review of the claim, finds that, if an exclusion was in fact employed, it was, and continues to remain, amply justified.[44] Thus, Defendants' motion for summary judgment as to Plaintiff's request for records pertaining Darby is **GRANTED**.

### III.    Whether the DOJ is a Proper Defendant

Finally, the FBI argues in a footnote that it is not a proper party to this case because it is not an "agency" for the purposes of the FOIA.[45]   *See* 5 U.S.C. § 552(f).  The Court observes that other U.S. District Courts considering this issue have disagreed with the FBI's position that it is not an "agency" within the meaning of 5 U.S.C. § 552(f).  *See, e.g., ACLU of Mich. v. FBI*, 2012 WL 4513626 (E.D. Mich. Sept. 30, 2012) (finding that the FBI was a

---

[43] R. Doc. 32 at p. 7 (quoting Attorney General's Memorandum on the 1986 Amendments to the Freedom of Information Act, § G, *available at* www.justice.gov/oip/86agmemo.htm#exclusions).

[44] *See* R. Doc. 32 at p. 7 (citing Attorney General's Memorandum, §G; *Beauman v. FBI*, Civ. No. 92-7603 (C.D. Cal. Apr. 28, 1993)).

[45] R. Doc. 23-1 at p. 9 n.1. Under the FOIA, an "agency" is defined as "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President) or any independent regulatory agency."  *See* 5 U.S.C. § 552(f).  The FBI asserts that it is not a proper defendant given it "is not an agency within this definition because it is a component of an executive department – the Department of Justice."  R. Doc. 23-1 at p. 9 n.1.

proper defendant).  Nevertheless, given that the FBI acted properly in responding to Plaintiff's FOIA request, and that the DOJ is also a party, the Court need not determine whether the FBI is a proper defendant in this case.  *See Vazquez v. United States Dep't of Justice*, 764 F. Supp. 2d 117, 119 (D. D.C. 2011) (finding that a court need not "dwell on the issue" of whether the FBI is a proper party to a FOIA action when the DOJ is also a named party to that action).

### Conclusion

The Court has found as a matter of law that Plaintiff failed to exhaust his administrative remedies regarding his request for records pertaining to himself and CGR. In addition, with respect to Plaintiff's request for records pertaining to Darby, the Court has found that Plaintiff failed to produce evidence that any alleged government impropriety has occurred.  Consequently, Plaintiff did not satisfy his burden necessary to overcome Darby's privacy interest in such records, if any records exist.  Thus, Defendants' *Glomar* response invoking exemptions 6 and 7(C) as to Darby was proper. Finally, the Court concludes that if any exclusion was in fact employed, it was, and continues to remain, amply justified.

Accordingly, for the reasons set forth above,

**IT IS ORDERED** that Defendants' motion for summary judgment is **GRANTED** and Plaintiff's claims asserted against Defendants in the above-captioned matter are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 31st day of May, 2013.

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

28